UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

CYNTHIA BRZAK and NASR ISHAK,

               Plaintiffs,        06 Civ. 3432

   -against-                             OPINION

THE UNITED NATIONS, KOFI ANNAN,
WENDY CHAMBERLIN, RUUD LUBBERS,
et al.

               Defendants.

-------------------------------------X



A P P E A R A N C E S:

        Attorney for Plaintiffs

        LAW OFFICE OF TIMOTHY J. MCINNIS
        521 Fifth Avenue
        New York, NY  10175
        By:  Monika Ona Bileris, Esq.

        SCHWAB FLAHERTY & ASSOCIATES
        Cp 510
        Geneva 17, Switzerland, GE  12111
        By:  Edward Patrick Flaherty, Esq.


        Attorney for Defendants

        DEBEVOISE & PLIMPTON LLP
        919 Third Avenue
        New York, NY  10022
        By:  Donald Francis Donovan, Esq.
             Catherine M. Amifar, Esq.

**Sweet, D.J.**

The United Nations ("U.N.") has moved under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint of Cynthia Brzak ("Brzak") and Nasr Ishak ("Ishak") (collectively, the "Plaintiffs") and to intervene pursuant to Fed. R. Civ. P. 24. For the reasons set forth below, the United Nation's motion to dismiss is granted.

**Prior Proceedings**

On October 28, 2005, Brzak filed a Title VII claim against the U.N., Kofi Annan ("Annan"), Wendy Chamberlin ("Chamberlin"), Ruud Lubbers ("Lubbers"), and five other individual defendants (collectively, "Individual Defendants") with the Equal Opportunity Employment Commission ("EEOC"). On January 31, 2006, the EEOC issued a Dismissal and Notice of Rights in which the EEOC determined that it lacked jurisdiction over the claim.

Brzak and Ishak filed their complaint on May 4, 2006. According to the complaint, the Plaintiffs, Brzak, a citizen of the United States, and Ishak, a French and Egyptian national, were both employed by the Office of the

1

U.N. High Commissioner for Refugees ("UNHCR"), located in Geneva, Switzerland. Complaint ¶¶ 7-8. Brzak alleges that she was grabbed in a sexual manner by Lubbers at the conclusion of a business meeting in Lubbers' office in Geneva in December 2003. Id. ¶ 19. Lubbers was the U.N. High Commissioner for Refugees at the time and remained in that capacity until February 2005. Id. ¶ 11. Brzak alleges that she sought advice on how to respond to the alleged incident from Ishak (who worked in the UNHCR Inspector General's office), and that Ishak advised Brzak to file a complaint with the U.N.'s Office of Internal Oversight Services ("OIOS"). Id. ¶¶ 21, 24. Brzak filed an OIOS complaint on April 27, 2004. Id. ¶ 22. Thereafter, Lubbers and other superiors retaliated against her by, among other things, displaying open hostility toward her, verbally harassing her, and giving her unmanageable work assignments. Id. ¶¶ 23, 25. Ishak similarly claims that, after it became known that he had counseled Brzak to file and OIOS complaint, he was not given a promotion for which he had been recommended, and that Lubbers attempted to abolish the office to which Ishak was attached. Id. ¶ 24. Plaintiffs allege that the OIOS issued a report that confirmed Brzak's allegations, but that the report's findings were subsequently rejected by

2

Annan, the U.N. Secretary-General at the time. Id. ¶¶ 22, 25. According to the complaint, Brzak filed a formal appeal from the Secretary-General's decision within the U.N.'s internal dispute resolution system, id.,[1] but the complaint does not indicate that Brzak pursued the appeal process to completion.

The Plaintiffs assert causes of action principally under Title VII, as well as causes of action for intentional infliction of emotional distress, indecent battery, and civil RICO violations. Id. ¶¶ 27-59. The U.N. and eight individual U.N. officials were initially named as defendants. Id. ¶¶ 9-17. Plaintiffs filed certificates of service purporting to reflect service on the U.N. and, by service on the U.N., Annan on October 16, 2006, Chamberlin on May 8, 2007, and Lubbers on June 8, 2007. All papers purporting to constitute service at U.N. Headquarters were formally returned by the United Nations to the United States Mission to the United Nations.

---

[1] The U.N. has an internal dispute resolution system pursuant to its Charter, which specifies that "the staff [of the U.N.] shall be appointed by the Secretary-General under regulations established by the General Assembly," U.N. Charter art. 101, para. 1, and Chapter XI of the Staff Regulations of the United Nations, which outlines procedures for appealing employment-related disputes.

3

At a status conference held on June 6, 2007, the Court requested that the United States and, if appropriate, the United Nations, brief the issue of immunity by September 17, 2007. That date was subsequently extended by the Court to October 2, 2007. On July 20, 2007, with Plaintiffs' consent, the Court dismissed the case against all Defendants except the United Nations, Annan, Chamberlin and Lubbers, and stayed the action with respect to all other issues pending briefing on the immunity issue.

On October 2, 2007, pursuant to 28 U.S.C. § 517, the United States made a submission with respect to the immunities involved and the U.N. Secretary-General's position on the application of those immunities to the Plaintiffs' allegations.[2]

This motion was heard on October 31, 2007.

**The Interest of the United States**

---

[2] 28 U.S.C. § 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

4

The United States' interest arises from the nation's treaty obligations to respect the applicable immunities of the U.N. and its officials. See generally Tachiona v. United States, 386 F.3d 205, 212 (2d Cir. 2004) ("A corollary to the executive's power to enter into treaties is its obligation to ensure that the United States complies with them."). These immunities arise from the U.N. Charter and the Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418 (the "General Convention"), both treaties to which the United States is a party.

According to the submission on behalf of the United States, pursuant to the foregoing treaties, the U.N. itself is absolutely immune from suit and legal process absent an express waiver. The U.N. has not expressly waived its immunity with respect to this case. To the contrary, it has explicitly affirmed its immunity by letters addressed to the United States' Ambassador to the U.N. dated May 15, 2006, and October 19, 2006.

The United States asserts that the General Convention also grants the Secretary-General and all Assistant Secretaries-General, which include both the High

5

Commissioner and Deputy High Commissioner for Refugees, "the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." General Convention art. V, § 19. The privileges and immunities accorded to diplomatic envoys are specified in turn by the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 ("VCDR"). Under the VCDR, diplomatic officials sued after leaving office continue to receive immunity "with respect to acts performed . . . in the exercise of [their] functions." Id. art. 39(2).

The United States further argues that, beyond these treaty provisions specifically applicable to the Secretary General and Assistant Secretaries-General, the General Convention also provides that U.N. officials generally, whether current or former, are immune from suit and legal process "in respect of words spoken or written and all acts performed by them in their official capacity." General Convention art. V, § 18(a).

Finally, the United States argues that under the International Organizations Immunities Act, 22 U.S.C. §§ 288 et seq. ("IOIA"), the officers and employees of any international organization covered by the statute,

6

including the U.N., receive immunity from suit and legal process as to "acts performed by them in their official capacity and falling within their functions as such . . . officers, or employees." 22 U.S.C. § 288d(b).

In accordance with its treaty obligations to communicate the views of the Secretary-General, see Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission of Human Rights, 1999 I.C.J. 62, 87 (Apr. 29), the United States has conveyed to the Court the position of the Secretary-General that the three remaining Individual Defendants are entitled to immunity in this matter.  The International Court of Justice has advised that the Secretary-General's views concerning the scope of immunity owed to U.N. officials should normally be accorded a high degree of deference. See id. at 61; cf. Leurwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp.2d 277, 287 (S.D.N.Y. 2001) (noting that "great weight" is to be given to any extrinsic submissions by foreign governments with regard to the scope of official acts immunity under the Foreign Sovereign Immunities Act).

7

The United States did not take a position on the applicability of official acts immunity to any of the allegations in this case.

**The Provisions Relating to Immunity**

Article 105 U.N. Charter provides that the U.N. "shall enjoy . . . such privileges and immunities as are necessary for the fulfillment of its purposes," and that its officials "shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization."

The General Convention defines the privileges and immunities relating to the United Nations and its officials.  Article II, section 2 provides that "[t]he United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."  The Secretary-General and all high officials serving at the level of Assistant Secretary-General and above are granted the same "privileges and immunities, exemptions and facilities accorded to diplomatic envoys, in accordance with international law."  General Convention art. V § 19.

8

Under Article 31 of the VCDR, current high officials enjoy immunity from criminal and civil jurisdiction, subject to limited exceptions. VCDR art. 31(1). Former high officials enjoy continuing immunity "with respect to acts performed . . . in the exercise of [their] functions . . . ." Id. art. 39(2). Under United States law, suits against U.N. officials who are immune under these provisions must be dismissed. See Diplomatic Relations Act § 5, 22 U.S.C. § 254d (1978) (mandating dismissal where immunity conferred by VCDR "or under any other laws extending diplomatic privileges and immunities").

In addition to the diplomatic immunity granted the Secretary-General and high officials, the General Convention provides the Secretary-General and certain U.N. officials immunity "from legal process in respect of words spoken or written and all acts performed by them in their official capacity." General Convention art. V § 18(a). The Secretary-General is to specify the categories of officials to which this immunity extends, and communicate those categories to the Governments of all member states. Id. art. V § 17.

9

A similar immunity is recognized by the IOIA, which provides that "[i]nternational organizations . . . shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." IOIA § 288a(b);[3] see Exec. Order No. 9,698, 11 Fed. Reg. 1809 (1946) (designating United Nations as an international organization covered by the IOIA). The IOIA also provides United Nations officials and employees "immun[ity] from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such . . . officers, or employees except insofar as such immunity may be waived by the . . . international organization concerned." 22 U.S.C. § 288d(b).

Under art. V, § 20 of the General Convention, the Secretary-General has "the right and the duty to waive the immunity of any official in any case where, in his opinion, the immunity would impede the course of justice and can be

---

[3] The scope of immunity enjoyed by foreign governments is defined by the Foreign Sovereign Immunities Act, 28 U.S.C.A. § 1602 et seq. (1976).

10

waived without prejudice to the interests of the United Nations." Section 21 further provides that the United Nations "shall co-operate at all times with the appropriate authorities of Members to facilitate the proper administration of justice, secure the observance of police regulations and prevent the occurrence of any abuse in connection with the privileges, immunities and facilities mentioned in this Article."

**Intervention is Not Necessary**

The U.N. has moved to intervene "in the cases of the individual defendants" for the limited purpose of asserting their immunity from suit. Because the U.N. is a named defendant, and therefore already a party to this case, it is not necessary for the U.N. to intervene.

However, the U.N. may make a special appearance in the case for the purpose of asserting immunity with regard to itself and the Individual Defendants. The immunity at issue here is a right belonging to and waivable only by the U.N.. See General Convention § 20 ("Privileges and immunities are granted to [U.N.] officials in the interests of the United Nations and not for the personal

11

benefit of the individuals themselves."); id. (Secretary-General holds "the right and duty to waive the immunity of any official in any case where, in his opinion, the immunity would impede the course of justice and can be waived without prejudice to the interests of the United Nations").

**The Complaint Against the U.N. is Dismissed**

Under the General Convention, the United Nations is cloaked with absolute immunity "from every form of legal process except insofar as in any particular case it has expressly waived its immunity." General Convention art. II, § 2. See also IOIA § 288a(b); 11 Fed. Reg. 1809. Accordingly, where, as here, the United Nations has not waived its immunity, the General Convention mandates dismissal of Plaintiffs' claims against the United Nations for lack of subject matter jurisdiction. See De Luca v. United Nations Org., 841 F. Supp. 531, 533 (S.D.N.Y. 1994), aff'd, 41 F.3d 1502 (2d Cir. 1994); Boimah v. United Nations Gen. Assembly, 664 F. Supp. 69, 71 (E.D.N.Y. 1987). All claims against the United Nations are therefore dismissed.

**The Claims Against the Remaining Individual Defendants Are Dismissed**

Under Article V § 19, of the General Convention, the Secretary-General and all high officials serving at the level of Assistant Secretary-General and above are granted the same "privileges and immunities, exemptions and facilities accorded to diplomatic envoys, in accordance with international law." General Convention § 19. As a result, Annan, Chamberlin and Lubbers, as former high officials of the United Nations, are subject to the immunity provisions accorded to diplomatic envoys under the VCDR, and thereby enjoy continuing immunity "with respect to acts performed . . . in the exercise of [their] functions." See VCDR Art. 31, 39.

Annan, Chamberlin and Lubbers also enjoy the protections afforded by the Diplomatic Relations Act, which requires dismissal of any case where immunity is conferred by the VCDR, and thereby enjoy continuing immunity "with respect to acts performed . . . in the exercise of [their] functions." See 22 U.S.C.A. § 254d. Even if these instruments did not apply, these defendants would enjoy immunity under §18(a) of the General Convention.

13

Furthermore, the three remaining Individual Defendants are entitled to immunity under the IOIA, which extends to officers and employees of the U.N. immunity from legal process "relating to acts performed by them in their official capacity and falling within their functions," unless such immunity is waived. See 22 U.S.C. 288d(b).

As the Legal Counsel of the Organization advised the Deputy Permanent Representative of the United States of America by letter dated May 15, 2006, and the Permanent Representative of the United States by letter dated October 19, 2006, the Secretary-General has determined that the Individual Defendants named in the Brzak case are immune. As such there is no waiver.

The question of whether the suit "relates to" acts performed by the Individual Defendants in their official capacity is determined on the basis of whether the acts alleged occurred in the course of an official's exercise of functions, and not on the nature of the underlying conduct. See, e.g., Donald v. Orfila, 788 F.2d 36, 37 (D.C. Cir. 1986); De Luca v. United Nations Org., 841 F. Supp. 531, 534-35 (S.D.N.Y. 1994).

The courts have consistently held that employment-related issues lie at the core of an international organization's immunity. For example, in Mendaro v. World Bank, 717 F.2d 610 (D.C. Cir. 1983), the D.C. Circuit held that, notwithstanding a broad waiver in the World Bank's founding treaty, IOIA immunity protected the Bank from a Title VII suit by a former employee who alleged that she had been the victim of sexual discrimination and physical and verbal sexual harassment by her coworkers. The Court excluded employment suits from the waiver, observing that compliance with the employment policies of over 100 Member States would be "nearly impossible," id. at 618-19, and noting that "one of the most important protections granted to international organizations is immunity from suits by employees of the organization in actions arising out of the employment relationship." Id. at 615. See also Broadbent v. Org. of Am. States, 628 F.2d 27, 35 (D.C. Cir. 1980) (holding that international organization's employment of plaintiff could not constitute "commercial activity" under restrictive theory of immunity); Morgan v. Int'l Bank for Reconstr. and Dev., 752 F. Supp. 492, 493 (D.D.C. 1990) (holding that international organizations are immune under IOIA and

15

international law from suits "arising out [of] their internal operations").

For similar reasons, the courts have consistently found that functional immunity applies to employment-related suits against officials of international organizations. See, e.g., De Luca, 841 F. Supp. at 536 (holding officials immune against claims that they, among other things, initiated a retaliatory tax audit and forged plaintiff's pay statement); Broadbent, 628 F.2d at 34 ("International officials should be as free as possible, within the mandate granted by the member states, to perform their duties free from the peculiarities of national politics."); D'Cruz v. Annan, 2005 WL 3527153 (S.D.N.Y. December 22, 2005) (holding that current and former U.N. officials are immune under the General Convention and IOIA from employment discrimination and retaliation claims).

The Secretary-General's determination that the Individual Defendants are immune from suit is dispositive. Plaintiffs' allegations of employment discrimination and retaliation are addressed against Annan only as a decision-maker in the internal employment dispute resolution process and against Chamberlin only as a senior supervisor in the

16

Office of the UNHCR. Cf. McGehee v. Albright, 210 F. Supp. 2d 210, 217-18 (S.D.N.Y. 1999); Broadbent, 628 F.2d at 34; De Luca, 841 F. Supp. at 536; D'Cruz, No. 05-8918, 2005 WL 3527153 at *1.

The allegations of sexual harassment and "indecent battery" against Lubbers are allegations of abuse of authority in the workplace. Whether Lubbers' alleged acts were intended or perceived as sexual in nature may be relevant to their wrongfulness, but not to the determination of functional immunity. In De Luca, the court rejected the notion that immunity did not apply to U.N. officials' alleged forgery and other wrongful conduct in the workplace — acts clearly outside the scope of the officials' job descriptions. The court held that, "[n]otwithstanding how improper any of these actions may have been, they represent precisely the type of official activity which § 7(b) of the IOIA was intended to immunize." De Luca, 841 F. Supp. at 535. See also Askir v. Boutros-Ghali, 933 F. Supp. 368, 373 (S.D.N.Y. 1996) ("The plaintiff's allegations of malfeasance [in failing to pay rent for property occupied during peacekeeping action] do not serve to strip the United Nations or [its official] of their immunities afforded under the U.N. Convention.");

17

Boimah v. United Nations Gen. Assembly, 664 F. Supp. 69, 72 (E.D.N.Y. 1987) (in a harassment and assault case, U.N. officials would have been immune because "employment-related decisions by officers charged with such responsibilities fall within the scope of [IOIA] immunity . . . even where the motives underlying the action are suspect"); cf. Morgan, 752 F. Supp. 492 (dismissing on grounds of immunity; although allegations were "a most serious infringement of an employee's rights," they concerned employment relationship and therefore allegations that conduct of officials was improper were irrelevant).

If the rule were otherwise, routine allegations of wrongful conduct or improper motive would defeat the immunity, and "the solid protection" that "Congress intended to afford" international organizations and their officials "would indeed be evanescent." Donald v. Orfilla, 788 F.2d 36, 37 (D.C. Cir. 1986).

**Conclusion**

For the reasons set forth above, the complaint is dismissed in its entirety for lack of subject matter jurisdiction.

It is so ordered.

**New York, N.Y.**
**April 29, 2008**

                                               ROBERT W. SWEET
                                               U.S.D.J.